PUERTO RICO LABOR RELATIONS BOARD, Petitioner, *v.* HEIRS OF J. SERRALLÉS, Respondent.

No. JRT-66-7. Decided April 24, 1967.

---

[3] *Cf. Alcoa Steamship Co.* v. *Perez Rodriguez*, 376 F.2d 35 (1st Cir.).

*J. F. Rodríguez Rivera,* Acting Solicitor General, *Luis M. Rivera Pérez, Marta Ramírez de Vera,* and *Celia Canales de González* for petitioner. *Orlando J. Antonsanti* and *Ernesto González Piñero* for respondent.

Second Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, Mr. Justice Santana Becerra, and Mr. Justice Dávila.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

The Puerto Rico Labor Relations Board, on behalf and in representation of the Insular Labor's Association, requested the court to enforce an arbitration award. It stated that on June 3, 1963 the Union and defendant Heirs of J. Serrallés signed a collective bargaining agreement to regulate their relations from April 24, 1963 to April 24, 1966; that during the effectiveness of said agreement the parties submitted to the consideration of an arbitrator the following submission agreement:

"To determine whether the employer is empowered under the provisions of the collective bargaining agreement in force to deliver, as it did deliver, the contribution for the Welfare Plan provided in Art. IX of the agreement, to the Board of Directors of Chapter No. 5 of the Insular Labor's Association instead of sending it by mail to the known address of the Union certified by the Board as the contracting Union."

On May 5, 1966 the arbitrator rendered an award determining the following:

"The employer is bound to pay to the certified Union, Insular Labor's Association, its obligations contracted in Art. IX of the agreement, Welfare Plan, and send it by registered mail to the known address of the latter."

The Board informs, in representation of the Association, that although the Union has requested respondent to comply with the preceding award, the latter "has not paid to the Union the contribution for the Welfare Plan which it owes according to the provisions of said award"; and it prays that we enforce it and order Heirs of J. Serrallés to make the payment to Insular Labor's Association accordingly.

We entered an order addressed to the employer requesting it to state the reasons why the award should not be enforced, and the latter has appeared impeaching the same because it is contrary to law and it implies an unjust enrichment.

In the collective bargaining agreement signed June 3, 1963, there appeared the employer, Heirs of Serrallés, and Insular Labor's Association as the contracting Union. Its Art. IV stated that the following employees constituted, on the date the agreement was signed, the employer's regular and permanent employees in the appropriate unit covered by the agreement: Catalino Avilés, Genaro Almodóvar, Pedro Colón Figueroa, Bernardino Colón, Francisco Ortiz, Daniel Pabón, Juan Francisco Silva, Marcial Troche Plata, Domingo Vargas Santiago and Herminio Vázquez.

Article VII created the Grievance, Claims, and Adjustment Committee and it stated that the decision of the Committee by majority vote as well as the decision of an arbitrator should conform to law, and as to the facts, they would be final and unappealable for the worker as well as for the Union and the employer. Neither the committee nor the

arbitrator would have power to vary the provisions of the agreement, but only to interpret it.

Article IX, under "Welfare Plan", provided that the employer would contribute $500 annually for said plan which the Union has established for the exclusive benefit of its employees. The agreement is signed, in representation of the Union, by Genaro Almodóvar, Juan Francisco Silva and another signature which apparently reads Waldemiro Arroyo.

In the record there is a copy of a letter of February 19, 1963, written in the Insular Labor's Association official printed stationery addressed to Serrallés and signed by Waldemiro Arroyo, President, informing him to take official notice that the employer's workers in the construction unit had elected, pursuant to the law, in a previously summoned meeting, the following Board of Directors of *Chapter No. 5 of this Union*, to which they are affiliated: President, Juan Francisco Silva; Vice-president, Francisco Ortiz; Secretary-Treasurer, Catalino Avilés; Marshal, Domingo Vargas; and Member, Genaro Almodóvar. Arroyo, the President of the Union, informs that this Board of Directors represents the other coworkers in the unit and as such they would have to negotiate with the employer in any grievances or matters arising as a consequence of their employments, and prayed for the employer's cooperation with these coworkers.

In the record there is copy of another letter dated April 19, 1965, addressed to Serrallés in which it is stated that the undersigned, workers and members of the Campo Constr. Union, Insular Labor's Ass'n *Chapter No. 5* request thereby, that, like the preceding year, payment of the $500 be delivered to Treasurer Catalino Avilés, and the latter, in turn, will deposit it in the bank to be used for leaves of absence, medicines, and medical services. This handwritten letter is signed by Juan Francisco Silva, President; Herminio Vázquez, Bernardino Colón, Daniel Pabón, Francisco Ortiz, Genaro Almodóvar, Catalino Avilés, Treasurer, Pedro Colón

Figueroa, and Domingo Vargas, the same persons, except one, who appear in the agreement. In the record there is a copy of a check dated April 29, 1964 drawn by Serrallés in favor of the "Treasurer of Campo Construction Union, *Chapter No. 5* of the Insular Labor's Association" for the amount of $500 and copy of a letter of May 1, 1964 from Treasurer Catalino Avilés acknowledging receipt of said check as requested by them pursuant to Art. IX of the collective bargaining agreement. There is a copy of another check of Serrallés dated April 30, 1965 for $500 and issued in the same manner as the preceding one, and a copy of Treasurer Avilés' letter of April 30, 1965 acknowledging receipt thereof for the Welfare Plan.

■ The Board admits that the collective bargaining agreement provides that the Committee as well as the arbitrator shall decide according to law and that when this occurs the awards may be judicially reviewed for errors of law, but the Board understands that at the hearing for arbitration the employer waived this clause of the agreement. *Cf. Labor Relations Board* v. *N.Y. & P.R. S/S Co.*, 69 P.R.R. 730 (1949); *Labor Relations Board* v. *Orange Crush of P.R.*, 80 P.R.R. 281 (1958); *Housing Authority* v. *Sup'r Ct.; Zequeira, Int.*, 82 P.R.R. 333, 345, 350 (1961); *Labor Relations Board* v. *Valencia Baxt*, 86 P.R.R. 267, 273 (1962); *Labor Relations Board* v. *Executive House, Inc.*, 91 P.R.R. 775 (1965).

We have examined the transcript of the proceedings before the arbitrator and we cannot agree with the Board that the employer waived anything in that sense. It appears from the record that the arbitrator stated that there existed a limitation that the award should conform to law and he accepted said limitation with the warning that he was not an attorney. That the parties could expect him to make his award according to the basic principles of law and could not expect him to abide by a law unknown to him, and that

with that explanation he accepted the arbitration. To these statements Arroyo, on behalf of the Union, made others, and expressly waived said limitation of the agreement. The employer's representative at the hearing did not make any statement and waived nothing, assuming he was invested with delegated powers to waive conditions stipulated in the collective bargaining agreement.

The record is rather inaccurate as to certain facts. We do not know in detail how the controversy arose before the Grievance Committee, or when. The collective bargaining agreement was not sent here in the record, and our Office of the Secretary had to request it. The arbitrator did not make any finding of fact. He made his award referring to the case of Metropolitan Bus Authority, D-341. Not all the documentary evidence admitted was sent here.

From the stenographic transcript of the evidence of the hearing before the arbitrator it is deduced that by the end of the year 1965 a discrepancy could have arisen between the directors of the chapter, object of the agreement, and Waldemiro Arroyo. As Arroyo stated, without ever testifying under oath, that by this time he had substituted these directors, or some of them. As Arroyo also stated, since 1963, beginning of the agreement, and until the end of 1965, those directors represented the contracting unit. He explained that under the Constitution of the Insular Labor's Association *chapters* are created in every shop, factory, trade, or industry organized by the Union, and each chapter is authorized to elect, by separate and secret vote, its own Board of Directors. Every chapter may adopt its own by-laws. He maintained that the President of the Union may designate delegates and representatives, and exercising said power he laid off, on November of 1965, the directors of Chapter 5.

There is copied in the record, a letter of November 16, 1965 addressed by Juan Francisco Silva to the Labor Relations Board in which he requests an investigation and there-

after that the Board declare the Chapter separated from the Union, and certain charges are presented to Arroyo in relation to the worker's funds and specifically with the use given to the employer's contribution to the Welfare Fund under Art. IX of the agreement. The action taken by the Board in relation to the foregoing does not appear from the record.

This is not a case dealing with a controversy involving two different Unions, or where there has been a change in filiation, or certification of the contracting unit, or of representation for the purpose of the compliance of a collective bargaining agreement. In this case the employer cannot be charged with having refused to negotiate with the certified Union, in order to negotiate with another, as it was charged before the arbitrator, or that it did not comply with its obligations with the contracting Union. It is rather a problem of persons within the same Union.[1] The collective bargaining agreement covered only Chapter 5 as appropriate contracting unit. (Art. IV which mentions all the workers comprising the whole unit; Letter of the President of February 9, 1963.) The employer's annual contribution of $500 for the Welfare Plan, as stipulated in Art. IX, was for the *exclusive* benefit of the employer's workers which comprised said unit. Said contribution was not for the benefit of all the workers or employees in general who belong to the Union.

Let us see the state of law to which the evidence before the arbitrator leads, whose award must conform to law.

The state of fact in this case, as far as we can determine from the record, is not similar to that in *Labor Relations Board* v. *Metropolitan Bus Authority*, 91 P.R.R. 484 (1964); or in *Comunidad Agrícola Bianchi* v. *Labor Relations Board*, 92 P.R.R. 665 (1965).

---

[1] We have some doubt as to whether the situation of this case falls within Art. VII of Grievances and Claims. It is not necessary to consider it in view of the decision we are adopting.

The Board requests that we enforce the award and order respondent Heirs of Serrallés to pay to Insular Labor's Association accordingly. The award determines that the employer "is bound to pay to the certified Union, Insular Labor's Association, *its obligations* contracted according to Article IX of the Agreement, Welfare Plan, and to *send it* by registered mail to the latter's known address."

██ We presume the award refers to the annual payment of the $500. It does not appear clearly whether the same has prospective effect (the award is of May 5, 1966 and the agreement expired on April 24, 1966), or whether it was rendered to compel the employer to pay to the Union once more the amounts already paid through the Chapter. If the latter, the award would not be according to law. The employer paid the money to the person authorized to receive it according to the facts, and also to the person in whose favor the obligation was constituted. Section 1116, Civil Code, 1930 ed.; § 1110, § 1118.

The Court will not enforce the award in that sense. In regard to any prospective action, the evidence in the record justifies that the Board reconsider again, in the light of the workers' complaint in relation to the use of such funds, whether it should use its discretion and power to help enforce the award as to this other aspect.

The request of the petitioner Board will be dismissed.